# WASHINGTON COUNTY,

## Auguft Term, 1798.

### Leffee of Daniel Dimond *v.* David Enoch.

1798. EJECTMENT for 230 acres of land, of *July* term, 1797.

On 3d *October*, 1786, *James Fitzpatrick* conveyed in fee fimple an improvement and 230 acres of land (the premifes in queftion) to *David Enoch*; who gave a bond, of the fame date, to *Fitzpatrick*, in 252*l.* 8*s.* conditioned, that, if *Fitzpatrick* pay or tender 126*l.* 4*s.* on or before 1ft *March* then next enfuing, *Enoch* will reconvey the tract of land that day conveyed. On 1ft *June*, 1788, this bond was affigned to *Daniel Dimond*, who had bought the land from *Fitzpatrick* for 200*l.* as appeared by an article of the fale, dated 29th *December*, 1786, by which he bound himfelf to pay 126*l.* on the 1ft *March* then next enfuing. About the year 1789 or 1790, *Dimond* went to *Enoch*, and propofed to take or give fatisfaction. *Enoch* declined both. In fpring, 1797, *Dimond* tendered upwards of 530 dollars to *Enoch*, who refufed to receive it.

*Fitzpatrick* had bought the land from one *Bozier*; and a bond of *Fitzpatrick* to *Bozier*, for the payment of 126*l.* 4*s.* with intereft due on it, part or all (it did not appear which) of the confideration money, had been transferred to *Enoch*. *Fitzpatrick*, not being able to pay the money, executed the conveyance, dated 3d *October*, 1786, to *Enoch*, and took from him the bond of that date. As good or better land, in that part of the country, has been fold fince, at twelve fhillings and fixpence *per* acre. *Enoch* was not to take poffeffion of the land, till after default of payment by *Fitzpatrick*, on 1ft *March*, 1787. A few days after that, he had the land furveyed on a warrant which he purchafed for it. *Fitzpatrick* was prefent and made no oppofition, and did not fay, that he had transferred his intereft in the land. *Enoch* has continued in poffeffion, and made improvements.

There was no evidence of any specific conversation or agreement, between *Enoch* and *Fitzpatrick*, at the time the conveyance was made in *October*, 1786. One witness said, he understood it as a mortgage; another said, he understood, that, if *Fitzpatrick* paid the money, at the time mentioned in the bond, the land was to be reconveyed to him. But, if he did not, that *Enoch* would hold it by the conveyance.

*Simonson*, for the defendant, offered to shew a warrant for the land, in the name of another person, at the time that the conveyance and bond were executed in *October*, 1786; and, urging that a defendant may claim under any title, stated, that, here, there was an adverse title, at the time, and that *Fitzpatrick* imposed on *Enoch*, and gave him a security, to which he had no right.

*Campbell* objected to this, that the defendant having come into possession under a deed which he accepted from the plaintiff; cannot now dispute the plaintiff's title. In an ejectment on a sheriff's sale, the debtor cannot set up a title from another person. It was so determined at *Nisi Prius*, in *Allegheny* county, last *May*, in the case of *Baldwin v. Bently.*

PRESIDENT. If a man take a lease from another, can he set up an adverse title, to bar an ejectment, or a claim for rent, by the lessor? We reject the testimony; but, if insisted on, the point may be reserved, though I see no difficulty in it.

*Simonson.* A covenant for the benefit of the covenantor, must be strictly complied with. All covenants must be taken according to the intent of the parties.

*Lyon*, for the plaintiff. This is a mortgage. And, the money, with interest, having been tendered, the title of the mortgage is extinguished.

PRESIDENT. A conveyance may be considered as a mortgage, though the defeazance be on a separate paper. We have not sufficient evidence, on which to found an opinion how this transaction ought to be considered. *3 Bac. Abr.* 634.—*2 Com. Di.* 299.

But I do not think, that we ought to strain hard, to construe a transaction of this kind as a mortgage. If, without violating any rule of law, we can consider it as the parties intended, we ought to do so. It may be considered as a conveyance on a certain condition, the default

1798.

of payment on the day. Each party may have wifhed to avoid the cofts and trouble of a fuit on a mortgage. *Fitzpatrick* may be fuppofed to fay, "Give me five months to pay the money without intereft, and, if I do not, the land fhall be yours;' and *Enoch* to fay 'I agree.'

Suppofe it a mortgage with poffeffion; cafes might exift, in which a tender of only the debt and intereft ought not to extinguifh the eftate. A man going into poffeffion under a contract is not as a trefpaffer. May he not have a claim for neceffary or proper repairs or improvements? Or muft he abftain from them, on the mere *poffibility* of the other performing the condition? —Was *Enoch* to have nothing for his warrant and furvey?

I lay not much ftrefs on the converfation (for it feems to be nothing more) between *Dimond* and *Enoch* in the year 1789 or 1790. No fpecific propofition appears to have been made; but only a trial whether *Enoch* was willing to depart from his contract with *Fitzpatrick*, and allow *Dimond* fomething for his *fpeculation*. No tender was made till 1797, ten years after the condition ought to have been performed. This feems to be unreafonable negligence. While it was doubtful whether the land was worth more than the money, *Dimond* feems to have been very inactive or indifferent. When an extraordinary rife in the value of land happened; he preffes for the land.

If the plaintiff's counfel think this *must* be conftrued as a mortgage, they may move for a new trial. For I have faid that it *may* be conftrued otherwife.

Verdict for the defendant.